## J. J. T. WRIGHT v. A. HEFFNER'S EXECUTORS.

### SUPREME COURT, TYLER TERM, 1882.

*Will—Executors' sale—Statutes construed.*—There is nothing contained in articles 5623, 5627, P. D., which contemplates that a testator's directions in his will might not be carried out without any order of the probate court, when creditors could not be prejudiced thereby, and the sole purpose of sale was for distribution among the heirs or legatees.

*Failure of consideration—Restoration.*—To constitute a plea setting up a failure of title a good defense, when suit is brought for the purchase money of property sold, the purchaser should offer to restore the property.

*Failure of executors to retain lien for purchase money.*—The failure of administrators or executors to take a mortgage upon lands sold could not be intended, under the law, to place the estate represented by them in a worse con-

dition than would be a person selling his own land, and such failure can not divest the equitable lien to secure the purchase money.

Appeal from Morris county.—Opinion by Stayton, J.—This action was brought by the executors of the will of A. Heffner, deceased, to recover upon a promissory note executed to them by the appellant and his sureties, for land which he had bought from them at a sale made by them as executors, and also to establish and foreclose a lien which they claimed on the land to secure the purchase money, no mortgage having been taken, as required by the statute, when property of an estate is sold under an order of the probate court.

There was a judgment in favor of the appellees against the appellant and one of his sureties, and against the representative of the other surety, he having died, from which only the appellant prosecutes this appeal.

The defense was failure of consideration, in that it was claimed that no title to the land for which the note was given passed to the appellant by the sale made by the executors.

A. Heffner died testate in 1871, and directed that all of his property, both real and personal, should be sold at auction, on a credit of twelve months, by his executors, and that after the payment of his just debts, the money arising from the sale should be divided in a manner stated in his will among his children and widow.

It is shown that the estate was solvent; in fact, it does not appear that there were any debts, and no possible delay or injury to creditors could result from carrying out the directions of the will by the executors.

This presents just that state of facts under which the probate court would, if called upon, have directed the executors, without further order, to carry out the directions given in the will, creditors having no rights which the interposition of the probate court was necessary to protect.

The former law provided that executors might sell property without an order of the probate court, when so directed to do by the will under which they were to act. (P. D., 1324.)

The law in force at the time of the death of A. Heffner (P. D., 5623, 5627) contains provisions, in effect, similar, but provided that, *as against creditors*, before such power could be exercised by an executor, the directions of the will must be confirmed by the probate court; but there is nothing contained in the law which seems to

contemplate that a testator's directions in his will might not be carried out without any order of the probate court, when creditors could not be prejudiced thereby, and the sole purpose of the sale was for the purpose of distribution among the heirs or legatees.

We are of the opinion that the executors had the power, under the will, to make the sale at which the appellant bought, and this without any order of the probate court, it not appearing that the the estate owed any debts.

It is not believed that the mode prescribed by the law in force at the time the sale was made, under which the appellant bought, for making sales in ordinary administrations, was intended to regulate sales made by executors acting under directions given in a will, to such an extent that sales made by executors, but not in strict conformity with the mode prescribed for administrators' or executors' sales made under the order of the court, should be void, and especially when it appears that a sale was fairly made, for a fair price, and for the purpose of a partition among the legatees, all of whom seem to have acquiesced in the sale for about ten years, and when the only party who now attacks the sale is the husband of one of the legatees, to whom, by his instructions, the property by him bought was deeded.

However irregular the sale may have been, it ill becomes the purchaser thereof, who was interested in the property before sold, to complain only when he is called upon to pay the purchase money.

If the sale had not passed the title of the estate to the purchaser, under the pleadings in this case, which only set up the failure of consideration as a defense, and do not offer to restore the property nor account for its rents during about ten years which they are presumed to have had possession of it, and which do not in any manner set up any fraud or mistake in the sale, it would be entirely unimportant, for it is the settled law of this court that, to constitute a plea setting up a failure of title a good defense, when suit is brought for the purchase money of property sold, that the purchaser should make restoration or offer to restore the property.

As was said by Wheeler, Justice, in Claiborne vs. Yoeman, 15 Texas, 47: "It is unnecessary to inquire in this case whether a failure of consideration, in the matter and manner alleged, could have availed the defendant, if well pleaded. If true, as stated,

that the sale of the certificate by the administrator was without authority and the title remained in the heirs of the intestate, he should have caused the heirs to be made parties, in order that the question of title should be adjudicated, and he should at least have restored, or offered to restore, the certificates to the plaintiff, or the heirs, if entitled.

"It is very clear that he could not retain the property purchased at the sale with the chances of making good his title, and at the same time refuse to pay the purchase money. To constitute a plea setting up such a defect of title a good defense to the action, he should assured a return, or offered to return, or should have otherwise accounted. * * * He cannot be permitted to retain * * and resist the payment of the note given by him as the consideration of the purchase, on the ground of the want of authority in the administratrix to sell." (Berry v. Booth, 7 Texas, 497; Semmons v. Henley, 28 Texas, 221.)

The evidence shows that eight of the eleven legatees, at or about the time of the sale, at the request of the appellant, indicated in writing their assent to the sale made by the executors. The wife of the appellant, who was also one of the legatees, received the deed which, under his purchase, the appellant directed to be made to her, for the land, and the parents or guardians of the other legatees, who were minors, have given, in so far as they could do so, the assent of the minors to the sale as made, and this in a manner which at the same time was satisfactory to the appellant. Under such facts and after such lapse of time the plea of failure of consideration could not be sustained if no title whatever had passed by the sale of the executors.

It is claimed that the court erred in establishing and fastening a vendor's lien on the land sold, and we are referred to the case of Autrey v. Whitmore, 31 Texas, 627, in support of the proposition that in sales made by executors, administrators or guardians of lands upon credit, no vendor's lien exists to secure the payment of the purchase money.

That was not the point directly before the court in the case referred to, but the language used in the opinion may have led to the belief that such was the effect of the opinion. In so far as it may seem to indicate such a rule, it does not meet the approval of this court, and may be considered as overruled. While it is true that in sales made under the probate laws upon a credit, administrators and executors are required to take mortgages as well as personal

security to secure the purchase money of land sold, yet it could never have been intended that a failure of such persons to take a mortgage would place the estate represented by them in a worse condition than would be a person selling his own land upon a credit. The manifest purpose of requiring a mortgage to be taken was to evidence in an unmistakable way the existence of a lien, that persons dealing with the purchaser might have notice, and the failure to take a mortgage can not divest the equitable lien to secure the purchase money. Such was the express statutory provision enacted after the decision above referred to. (Act May 27, 1873, General Laws, 115, which we regard as a statutory declaration of that which was the law before.)

The court found, as a fact, that the credit of $400 claimed by the appellant on account of a note executed by him to the mother of one of the minor legatees, was not agreed to by the executors, that it had never been paid, and that the executors could receive nothing but money in payment of the note sued upon, and therefore disallowed the credit; and we are of opinion that there was no error in this ruling, for the execution of such a note would not bar the right of the minor to demand and receive from the executor the legacy given by the will.

The judgment is affirmed.